UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

REGINALD J IRWIN, JR,

     Plaintiff,

v.                                  Case No. 3:21cv726-MCR-HTC

R.N. KELLY M KELLY,
A.P.R.N SHEILA ANNETTE MELVIN,
HEALTH SERVICE ADMINISTRATOR K HALL, and
CENTURION OF FLORIDA LLC,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Motions to Dismiss filed by Individual Defendants Nurse Kelly, Nurse Melvin and Administrator Hall, as well as medical provider, Centurion of Florida, LLC, (ECF Docs. 39, 40, 41, and 42), seeking to dismiss Plaintiff's complaint which alleges Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. ECF Doc. 1. Upon consideration of the motions, Plaintiff's response (ECF Doc. 45), and the complaint (ECF Doc. 1), the undersigned respectfully recommends the motions be DENIED.

## I.    BACKGROUND

The following facts are taken from Plaintiff's complaint and are assumed to be true for purposes of these motions to dismiss.  In December of 2014, Plaintiff entered the Florida Department of Corrections ("FDOC") from county jail with a "Health Information Transfer Summary" which contained a report stating that Plaintiff's sciatic nerve, lower back, left foot and leg were damaged.  ECF Doc. 1 at ¶2.  In July of 2017, Irwin arrived at Santa Rosa CI Annex and was seen by S. Melvin, APRN.  She suspended all medications until Irwin was seen by a Physical Therapist, "per policy, practice, and custom of Centurion Health Care[1]."  ¶3.  During this time -- July through September 2017, Plaintiff "struggled with a walker, tripping and stumbling" and suffering "pain, burning feet, electric shock, numbness and creepy crawlies."  He made several sick call requests for pain medication, "to no avail." *Id.*

Finally, in September of 2017, Plaintiff saw a physical therapist, N. Sanders D.P.T., who "deemed it necessary to issue a seated Rollator and 'medical issued' shoes to protect Irwin's left foot from injury due to Irwin's foot drag and 'Crocs' falling off while attempting to walk."  ¶4.  Defendant K.M. Kelly (a registered nurse)

---

[1] The proper name of this defendant is Centurion of Florida LLC ("Centurion").  ECF Doc. 42 at 5-6.

and Defendant S. Melvin declined to follow the recommendations of Dr. Sanders.
*Id.*

On March 7, 2018, Irwin was seen by Dr. Sanders again, who again recommended a Rollator and medical shoes because Irwin was "still dragging his left foot and Crocs are coming off." He also opined that Irwin's "mobility is not getting better . . . needs a Physician follow up." ¶5.

Nevertheless, on March 17, 2018, Defendants Kelly and Melvin declined to follow Dr. Sanders' recommendations despite knowing "that without these accommodations Irwin was at risk to cause serious injury to himself." ¶6. This decision "was pursuant to Centurion's policy of denying Irwin's medical care to save money and to appease biased security staff." *Id.*

On October 9, 2018, Dr. Sanders made notes that he had concerns for Irwin's safety because of sight issues and not having proper footwear, speculating that an injury was inevitable. ¶7. On October 23, 2018, Dr. Sanders documented that Irwin was still in Crocs, had visual issues with patch over left eye, and decreased foot sensitivity and balance. His recommendations were rejected by Defendant K. Hall, Health Service Administrator, and Defendant Melvin, who stated that Plaintiff did not meet Health Service bulletin (HSB) standards for therapeutic shoes, per the policy of Centurion Health Care despite their knowledge of the risk outlined by Dr. Sanders. ¶8.

The week of November 27, 2018, Irwin had three falls: one at the toilet causing him to fall in, another at the urinal when his leg collapsed causing Irwin to put his hand in the urinal to keep from hitting the floor, and a third while going to medical when his Croc twisted and fell off causing him to fall and hit the cement. ¶9.

On November 27, 2018, Dr. Sanders recommended a wheelchair, noting that Plaintiff's back was getting worse with pain in the lower back and down his left side as well as shakes with lower left leg weakness, and balance issues. ¶10. K.M. Kelly, RN denied the wheelchair. ¶11.

By December 18, 2018, Plaintiff had more falls, going to chow and to call outs. On January 15, 2019, Defendant Hall denied Plaintiff therapeutic shoes, finding he did not qualify for them, causing Irwin's condition to worsen.

On January 29, 2019, K.M. Kelly authorized a new wheelchair for Plaintiff and directed that Plaintiff should walk behind it but refused to allow Plaintiff to wear any shoes other than Crocs.

On March 22, 2019, while Plaintiff was attempting to walk behind the wheelchair wearing Crocs, his left leg gave way, causing the croc to twist and turned sideways and popped. Later that day, Irwin had a callout to medical to pick up a temporary wheelchair pass. The nurse there (not a defendant) would not treat it as a medical emergency "due to it not being life threatening or bleeding, per policy of

Centurion Health Care." On March 23, 2019, the same nurse treated Plaintiff for his sprained ankle and stated that he would be seen by a doctor, but no other treatment was provided at that time pursuant to the policy of Centurion, and Plaintiff never saw the doctor. ECF Doc. 1 at ¶15.

On April 21, 2019, while Irwin was getting his new eye patch, two nurses asked about his very swollen ankle and both stated that Plaintiff should make another sick call and that x-rays should have been done. *Id.* at ¶16. However, from May through June 2019, Plaintiff suffered swelling of the ankle, could not put pressure of any kind on the foot, making it difficult to stand up to shower, urinate or change pants, but no medical treatment was offered due to Centurion policy. *Id.* at ¶17.

On July 10, 2019 and July 17, 2019, Plaintiff went to medical to be treated for a blood clot, but he refused treatment, feeling like the condition had not been properly confirmed. X-rays and venous doppler tests were done, but "notes show that S. Melvin APRN did not read until September 5, 2019", which Plaintiff claims reveals her lack of concern for Plaintiff's health. *Id.* at ¶18.

In August of 2019, Plaintiff filed a number of sick calls for pain to ankle and foot and for not being able to sleep due to lower back pain, tingling, numbness, throbbing in his left leg. *Id.* at ¶19. No treatment was provided due to Centurion policy. Then, from September through October of 2019, sick calls were done for intense pain in ankle, foot and lower back. He also complained of left leg trembles,

cramps, muscle spasms, pins, needles and "creepy crawlies" but no treatment was offered per the policy of Centurion. *Id.* at ¶20.

On November 20, 2019, another nurse (not a defendant) ordered new Venous Doppler tests on his leg and confirmed that there was no evidence of "deep vein thrombosis or Baker's Crystals (Gout) that S. Melvin also claimed Irwin had, to justify denial of the proper treatment" per the policy of Centurion. *Id.* at ¶21.

On January 14, 2020, another nurse, APRN B. Coulter (not a defendant) ordered a consult with Dr. Sanders. Plaintiff alleged that someone's notes (it is not clear whose notes) stated "Irwin's current condition is a result of S. Melvin, K.M. Kelly, K. Hall and Centurion Health Care denial of accommodations to prevent further harm to Irwin."

Finally, Plaintiff alleges that from April 2020 to the date of the complaint, Plaintiff continued to make sick calls for relief from pain, muscle spasms, numbness, pin pricks, pure misery and still cannot put pressure on the ankle. No treatment was provided, due to policy of Centurion. *Id.* at ¶24. He concludes, "This pattern of denying treatment has caused Irwin's condition to worsen with multiple injuries and permanent physical harm as Irwin has been forced to suffer the whole time." *Id.*

His complete statement of claims is the following: "Plaintiff's Eighth Amendment Rights against cruel and unusual punishment were violated by Defendants Kelly, Hall and Melvin and also by Defendant Centurion Health Care."

ECF Doc. 1 at 12.  His complete request for relief was the following: "I am seeking monetary damages in an amount to be determined by a jury.  The permanent physical injuries to the Plaintiff should be valued at 10 million dollars (actual and punitive)."

## II.   LEGAL STANDARD

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  However, "[l]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice.  *Id*. (quotations and citation omitted).  Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.   DISCUSSION

The individual Defendants make the following arguments in their motions to dismiss:  (1) Plaintiff cannot receive compensatory damages because he has not alleged a more-than-*de-minimis* injury and (2) Plaintiff has not alleged facts sufficient to show Defendants acted with deliberate indifference or that their conduct caused an injury.  In addition to seeking dismissal as to Plaintiff's claim for compensatory damages, Centurion also argues Plaintiff has not sufficiently alleged facts showing any constitutional violation was caused by a Centurion custom or policy.

### A.    Whether Plaintiff is Entitled to Compensatory Damages

Pursuant to 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."   The Eleventh Circuit has interpreted this statute to mean that "for constitutional claims, 42 U.S.C. § 1997e(e) bars prisoners from seeking compensatory damages absent a showing of 'more than *de minimis*' physical injury." *Ketchup v. Barr*, 2021 WL 3360959, at *2 (11th Cir. Aug. 3, 2021) (citing *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015) and *Hoever v. Marks*, 993 F.3d 1353, 1361 (11th Cir. 2021) (en banc)).  "[T]o avoid section 1997e(e)'s bar on the recovery of monetary damages, a prisoner's alleged 'physical injury must be more than *de minimis*, but need not be significant.'"  *Furman v. Warden*, 827 F. App'x 927, 933 (11th Cir. 2020) (citing *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *op. reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc)).

Reading Plaintiff's complaint liberally, as this Court is required to do, the undersigned finds that Plaintiff has alleged a more than *de minimis* injury.  As stated above, Plaintiff alleges he was denied medical supplies and treatment for his sciatic nerve, lower, left foot and leg pain, which resulted in various injuries, including pain to his ankle and foot, not being able to sleep due to lower back pain, tingling,

numbness, throbbing in his left leg, and worsening of those conditions.[2]  Plaintiff also alleges that, as of December 2020, his "condition of left swollen ankle remains very swollen, not able to put weight on it still, tender to touch, trembles, spasms cramps continue to get worse along with back pain."  ECF Doc. 1. at ¶22.

These allegations, if accepted as true, show that Plaintiff suffered a more than *de minimis* injury.  *See Long v. Hosseini*, No. 5:18CV72-TKW-HTC, 2019 WL 7606240, at *5–6 (N.D. Fla. Dec. 12, 2019), *adopted by* 2020 WL 354329 (N.D. Fla. Jan. 21, 2020) (finding "severe pain in his left hip that extended to his back, legs and knees [that] made it difficult and extremely painful to walk or stand on his feet for any length of time" was more than a *de minimis* injury); *Merritt v. Godfrey*, No. 3:13cv607/LAC/EMT, 2015 WL 5439306, at *8 (N.D. Fla. Aug. 10, 2015) (concluding, at motion to dismiss stage, that plaintiff's allegations of back pain while sitting or standing, which persisted and worsened during the year and a half between the use of force and the filing of the complaint, were sufficient to survive dismissal), *adopted by* 2015 WL 5440570 (N.D. Fla. Sept. 19, 2015); *Goodwin v. Hatten*, No. 1:07cv123–MMP/AK, 2010 WL 750290, *5 (N.D. Fla. Mar. 1, 2010) (concluding, at summary judgment stage, that plaintiff presented sufficient evidence to

---

[2] The undersigned also disagrees with Defendants that Plaintiff has not alleged he suffered any injuries from the three (3) falls he had.  Plaintiff's allegations are that without the prescribed medical supplies, Plaintiff was caused to fall on numerous occasions and the combination of the falls and the lack of medical treatment resulted in worsening his condition, his swelling, and his pain.

demonstrate a genuine issue of material fact as to whether his injuries were more than *de minimis* where plaintiff alleged he suffered "unbearable" pain in his ribs and was unable to breathe deeply, medical staff prescribed ibuprofen for pain and ordered diagnostic testing, and medical staff observed bruising and swelling that lasted no more than one week).

While the Court is aware of the cases which hold that a mere sprained ankle is not a more than *de minimis* injury, *e.g.*, *Grayson v. Ivey*, 2020 WL 6054334, at *2 (M.D. Ga. June 25, 2020), *adopted by* 2020 WL 4201194 (M.D. Ga. July 22, 2020); *Rawls v. Payne,* 2006 WL 2844563, at *5 (S.D. Miss. Sept. 11, 2006); or *Springer v. Caple*, 2017 WL 989306, at *5 (W.D. Ark. Jan. 25, 2017), Plaintiff has alleged more than just a sprained ankle. Instead, if Plaintiff's claims are taken as true, he suffered an ankle injury that has not healed over a year and a half after it was suffered. Such an alleged injury goes beyond "minor bruising or swelling" or "trivial harms" that "healed without the need for any medical treatment." *Pierre v. Padgett*, 808 F. App'x 838, 844 (11th Cir. 2020). "[I]njuries that have been found to exceed the *de minimis* threshold go beyond 'routine discomfort' and often include injuries requiring medical attention or resulting in permanent injury." *Furman*, 827 F. App'x at 933. Therefore, the undersigned recommends Defendant's motion to dismiss the compensatory damages claim be denied.

## B.    Whether Plaintiff Has Alleged Facts to Show Each Defendant Acted with Deliberate Indifference

A prison official violates the Eighth Amendment when the official acts with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To state a claim of deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to establish the following: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

A serious medical need is "one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11thCir. 2003)).  For an actor to be found to have acted with deliberate indifference to that need, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (quoting *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).  For an actor to have subjective knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate

indifference requires more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted).

The Defendants do not appear to dispute that Plaintiff has alleged a serious medical need. Instead, Defendants argue Plaintiff has not alleged they were not actually aware of a risk of serious harm to Plaintiff in denying him a Rollator, medical shoes, or wheelchair pass. The undersigned finds otherwise.

According to Plaintiff, when he arrived at Santa Rosa CI, he was evaluated by Defendant Melvin. Melvin knew he was on medications, as she suspended them. Melvin also knew Plaintiff needed to be evaluated by a physical therapist. The physical therapist, Dr. Sanders, prescribed a Rollator and medical shoes. Melvin, Kelly, and Hall, however, denied these supplies to Plaintiff on more than one occasion. Plaintiff further alleges that Kelly and Hall rejected the treatment because of a Centurion policy and not for a medical reason.

Plaintiff's allegations, and the reasonable inferences drawn therefrom, are sufficient to state a deliberate indifference claim against Hall, Melvin, and Kelly. The allegations indicate the Defendants knew Plaintiff was diagnosed with certain medical conditions before he arrived at Santa Rosa, knew a therapist had recommended a Rollator and therapeutic shoes, and knew depriving him of these

items could make it difficult for him to walk and balance, leading to pain and a risk of falling. Nevertheless, the Defendants denied these items to Plaintiff. *See Walker v. Cty. of Nassau*, 2016 WL 11481725, at *13 (E.D.N.Y. Aug. 8, 2016) ("With respect to the subjective prong of the deliberate indifference standard, a willful deprivation of a cane or other medical equipment, resulting in pain, will ordinarily support an inference of deliberate indifference.") (citations omitted). Thus, although Plaintiff may not be able to prove his claims, the undersigned concludes that based on Defendants' alleged interference with a prescribed treatment, and the knowledge such interference could cause additional pain, Plaintiff has stated an Eighth Amendment claim against Melvin.

Defendants also argue Plaintiff failed to allege they acted with deliberate indifference towards his medical needs; instead, Plaintiff simply disagrees with the treatment he was provided, which is not sufficient to establish an Eighth Amendment violation. The undersigned disagrees.

It is true that Plaintiff was not entirely denied treatment for his foot, leg and back problems. As Centurion points out, ECF Doc. 42 at 12, Plaintiff received the following medical attention: (1) as of July 2017, Plaintiff had a walker to address Plaintiff's lower left leg/back condition; (2) in September 2017, Plaintiff had physical therapy for his condition; (3) in March 2017, Plaintiff had physical therapy for his condition; (4) in January 2019, Plaintiff is given a wheelchair for his

condition; (5) the day Plaintiff sprains his ankle, March 22, 2019, he submits a sick call request and, the very next day, March 23, 2019, he is seen in sick call and is treated for his ankle by a registered nurse; (6) on March 22, 2019, he goes to medical to pick up another wheelchair pass; (7) in April 2019, Plaintiff receives a new eye patch at his monthly medical supply pick up; (8) in April 2019, when nurses see that Plaintiff's ankle is still swollen, the nurses encourage Plaintiff to access sick call again; (8) after accessing sick call for his swollen ankle, in July 2019, x-rays are taken of Plaintiff's ankle and a venous Doppler ultrasound is taken to rule out a blood clot being the cause of the swelling; (7) in September 2019, an advance registered nurse practitioner reviews the x-ray and venous Doppler results; (8) in November 2019, an advanced registered nurse practitioner orders another venous Doppler ultrasound to rule out a suspected blood clot or gout as the cause of the swelling; (8) in January 2020, an advanced registered nurse practitioner orders Plaintiff to physical therapy again for his condition.

Plaintiff's allegations, however, suggest these treatments were not effective in treating his pain or preventing him from falling. *See Brown v. DeFrank*, 2006 WL 3313821, at *23 (S.D.N.Y. Nov. 15, 2006) (denying motion to dismiss where "knowing of [inmate's] painful hip condition, [defendants] did not allow [inmate] to have a cane, which would have greatly reduced [inmate's] hip pain when walking, for approximately one week"); *see also Bingham v. Thomas*, 654 F.3d 1171, 1176

(11th Cir. 2011) ("Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all.") (citation omitted).  Moreover, Plaintiff did not get a wheelchair until 2019, almost two years after his arrival to Santa Rosa.  And, other than references to Centurion's policy, none of the Defendants provided any medical reason for denying the physical therapist's recommendations.  *See Bingham*, 654 F.3d at 1176 ("An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment.") (citation omitted).

Finally, the individual Defendants argue Plaintiff has not adequately alleged that their conduct caused his injuries.  The undersigned disagrees.  Plaintiff alleges that Melvin, Kelly and Hall denied him shoes other than Crocs, despite Dr. Sanders's recommendation that medical shoes were "necessary to protect Irwin's left foot from injury due to Irwin's foot drags and Croc's falling off while attempting to walk." ECF Doc. 1 at ¶4.  He then alleges that, on March 22, 2019, "while Plaintiff was attempting to walk behind the chair wearing Crocs, his left leg gave way, causing the Croc to twist, the left foot twisted and turned sideways and popped."  ECF Doc. 1 at ¶14.  Thus, the twisting of the Croc, which was similar to the precise harm communicated to Melvin and Kelly by Dr. Sanders, contributed to the injury to Plaintiff's ankle.  Although Melvin argues that this injury is too "attenuated" from

her conduct to be attributable to her, ECF Doc. 39 at 17, that issue is better considered on summary judgment rather than on a motion to dismiss.

### C.   Whether Plaintiff Alleged a Centurion Policy was the Motivating Force Behind his Injury

Plaintiff has also asserted a deliberate indifference claim against Centurion. To the extent Plaintiff is seeking to hold Centurion liable for the acts of its employees, he cannot do so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc); *see Denno v. Sch. Bd. of Volusia Cty.*, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of Centurion was the "moving force" behind the alleged constitutional deprivation[3] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978).

Centurion seeks dismissal on the ground that Plaintiff has not identified any such policy. Instead, Plaintiff merely references generic policies, such as a policy

-----

[3] "[W]hen a private entity … contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality under section 1983." *See Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997).

to save money, or a policy not to treat non-life threatening injuries, or states he was denied treatment or did not qualify for treatment because of a "Centurion policy". According to Centurion, such allegations are merely conclusory and speculative and are insufficient to overcome a motion to dismiss. The undersigned disagrees. Judges in this District have found similar allegations to be sufficient at the motion to dismiss stage.

For example, in *George v. CoreCivic*, a case pending in this District, Chief Judge Walker found similar allegations that the medical provider was withholding treatment for monetary concerns was sufficient to overcome a motion to dismiss. *George v. CoreCivic,* 5:16-cv-254-MW/HTC, ECF Doc. 55 ("While a close call, Plaintiff has alleged sufficient facts to state a claim upon which relief can be granted. This action may not survive summary judgment—but at the motion to dismiss stage, Plaintiff's allegations that the withholding of necessary treatment for a serious medical need for monetary reasons states a claim."); *see also, Hayes v. Corizon Health, Inc.,* No. 4:19CV97/MW/EMT, 2020 WL 6219833, at *8 (N.D. Fla. Sept. 22, 2020), *report and recommendation adopted,* No. 4:19CV97-MW/EMT, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020) (finding allegation that plaintiff "did not receive necessary treatment sooner due to Centurion's custom and/or policy of cost containment" was sufficient to overcome a motion to dismiss"); *Carmichael v. Jones*, No. 4:16CV238-RH/CAS, 2017 WL 2637410, at

*9 (N.D. Fla. Apr. 12, 2017), *report and recommendation adopted,* No. 4:16CV238-RH/CAS, 2017 WL 2636492 (N.D. Fla. June 17, 2017) (rejecting argument that allegation Corizon "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery ... and to deny treatment based on prisoner age, and on the basis of cost-savings" was speculative and conclusory). Thus, the undersigned recommends Centurion's motion to dismiss be denied.

## IV.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.    That Defendants' motions to dismiss (ECF Docs. 39, 40, 41, and 42) be DENIED.

2.    Defendants be directed to file an answer within fourteen (14) days of the Court's Order adopting this Report and Recommendation.

3.    That the matter be referred back to the undersigned for further proceedings.

At Pensacola, Florida, this 11th day of February, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.